# Steele-Smith D. G. Co. v. Birmingham R. L. & P. Co.

### Assumpsit.

(Decided November 26, 1916.   73 South. 215.)

Electricity; Contract Rates; General; Special.—General and special as used in the contract under consideration are antonyms, the word "general" meaning pertaining to the majority, common to the greatest number, and the word "special" meaning pertaining to one or more individuals as distinguished from the class to which they belong; hence, the contention that defendant was entitled to a lower rate because a few of the larger business concerns in the city received a special rate in consideration of an agreement to use a specified quantity of an electric current within a specified period, is not sustained.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Assumpsit by the Birmingham Railway, Light & Power Company against the Steele-Smith Dry Goods Company to recover the difference between the amount paid it for electric lights, and the amount it claimed to be due for the months of April, May, June, July, and August, 1913. Judgment for plaintiff, and defendant appeals. Affirmed.

ALLEN, FISK & TOWNSEND, for appellant. TILLMAN, BRADLEY & MORROW, and ROY M. STERNE, for appellee.

PELHAM, P. J.—The case was tried before the court without the intervention of a jury. There is no dispute or conflict in the evidence. A decision of the case turns on the proper interpretation to be given the word "general" in that clause of a ten-year contract entered into by and between appellant and appellee in 1906, wherein appellee agreed, in case of a "general" reduction of rates for light or power in Birmingham, the rates named in said contract would be reduced in proportion; the clause of the contract in question reading as follows: "It is further agreed that, if the company [appellee] reduces the general rates for light or power in Birmingham, the rates herein named shall be reduced in proportion to such reduction."

The rate for power is not involved in this controversy; the rate for lighting only being in question.

The special rate named in the 1906 contract is 6.63 cents per kilowatt hour for lights. At that time the general rate applying in Birmingham was 12 cents per kilowatt hour, with a maximum quantity discount of 35 per cent., making the net general rate to users of the maximum quantity named in the discount scale 7.80 cents per kilowatt hour. In 1907 the net general rate was reduced by increasing the maximum quantiy discount, thus making the net rate to users of the maximum quantity 6 cents. At that time the rate to appellant was voluntarily reduced from 6.63 cents to 5.10 cents. In 1912, pursuant to an ordinance adopted by the city of Birmingham, appellee again reduced the general rate, fixing the gross rate at 10 cents, with a maximum quantity discount of 50 per cent to users of 3,000 or more kilowatt hours in a month, making the net general rate to users of the maximum quantity 5 cents. The evidence also shows that appellee had ten-year contracts with certain business concerns in the city of Birmingham, whereby, in consideration of an agreement to take a minimum of 3,500 kilowatt hours per month, appellee granted a discount of 15 per cent. from the net rate after the allowance of the quantity discount of 50 per cent., thus making the net rate to parties having these contracts 4.25 cents.

. At the time of the reduction of rates in compliance with the city ordinance of 1912 mentioned above appellee reduced the rate for lighting to appellant from 5.10 cents, the rate existing since 1907, to 4.25 cents. Appellants declined to accept this as the correct rate, contending at first for a rate of 3.08 cents. It is not

shown how this rate was arrived at; and on appeal appellant withdraws this contention, asserting the true rate to be 3.612 cents—arrived at by taking the rate of 4.25 cents as the general rate, and reducing that in the same proportion that the contract rate of 6.63 cents was a reduction from the then general rate of 7.80 cents. In other words, appellant contends that the rate of 4.25 cents given those concerns with whom appellee had made ten-year contracts providing for an additional 15 per cent. discount should be used as the base rate, and not the rate of 5 centes, arrived at by deducting the maximum quantity discount of 50 per cent. from the gross general rate of 10 cents.

It is difficult to see how the rate of 4.25 cents can be considered as other than a special rate. It was not a rate which was available to the general public. Those who obtained it not only entered into a contract to use a quantity larger than the quantity which would merit the maximum general discount of 50 per cent., but they bound themselves so to do for a period of ten years. Appellee did not, by its contract with appellant, bind itself not to enter into contracts with other large consumers of current; nor is there any intimation of an intention, as suggested by counsel for appellant, to make appellant the "most favored customer." A simple arithmetical calculation shows that the appellant's original rate of 6.63 bore the same relation to the then general net rate of 7.80 cents as the rate of 4.25 cents given in the contracts claimed as creating a general rate of 4.25 cents (which was the rate charged the appellant) bears to the current general net rate of 5 cents. The same proportion is observed in the rate established in 1907. It appears, then, that the appellee was giving to a few large consumers of current who were willing to enter into special contracts the benefit of an additional discount over and above that enjoyed by the general public, who paid according to a sliding scale of quantity discounts from the gross rate of 10 cents, the maximum discount being 50 per cent., making a net rate of 5 cents, the rate which applied in general to users of 3.000 kilowatt hours or over. It is admitted that appellant used that quantity of current which, without its special contract, would have entitled it only to the maximum discount. Because of that special contract, appellant enjoyed a still further reduction in rate, and cannot complain because other large consumers of current, who were also willing to enter into special contracts, were granted the same privilege.

Carried to its logical analysis, the contention of the appellant would lead us to hold that the making of special contracts with a few of the larger business concerns in the city of Birmingham, under the terms of which a special rate was given in consideration of an agreement upon their part to use a specified quantity of electricity within a stipulated period for a certain term of years, constituted a reduction in the general rates in the city of Birmingham to the amount named as a special rate to these particular contract users. The terms "general" and "special" are antonyms. The accepted definitions of the terms will tend to point out and more clearly show that the interpretation we have given to the clause of the contract in question is correct:

"General. a. * * * 2. Pertaining to the majority, common to the greatest number, but not to all; true of a large number or proportion; widespread or prevalent, as distinguished from universal; as, a general practice; general rainfall."—Funk & Wagnall's New Standard Dictionary, p. 1018.

"Special. a. 1. Having in a peculiar and distinguished degree some characteristic or characteristics; out of the ordinary; singular or unique; express; particular; as, a special reduction; special favor; special care. * * * 4. Pertaining to one or more individuals, as distinguished from the class to which they belong; logically singular; individual; as, what is your special business."—Id. p. 2331.

The rate of 4.25 cents contended for by appellee and charged to appellant under the terms of the contract by appellee is the rate which should apply, and is a compliance with the contract between the parties. This seems to have been the holding of the court below, and the judgment is in conformity with this interpretation, and is accordingly affirmed.

Affirmed.