**HENDERSON,** Price Administrator, **v.
WASHINGTON, MARLBORO & AN-
NAPOLIS MOTOR LINES, Inc.**

No. 8400.

United States Court of Appeals for the
District of Columbia.

Decided Dec. 4, 1942.

---

Mr. Harry W. Jones, of Washington, D. C., of the Bar of the State of Missouri, pro hac vice, by special leave of court, for appellant. Mr. Harry L. Shniderman, of Washington, D. C., entered an appearance for appellant.

Mr. James P. Donovan, of Washington, D. C., for appellee.

Before MILLER, VINSON, and EDGERTON, Associate Justices.

MILLER, Associate Justice.

The Act of October 2, 1942,[1] amending the Emergency Price Control Act of 1942[2], provides: " * * * That no common carrier or other public utility shall make any general increase in its rates or charges which were in effect on September 15, 1942, unless it first gives thirty days notice to the President, or such agency as he may

designate, and consents to the timely intervention by such agency before the Federal, State, or municipal authority having jurisdiction to consider such increase."[3] By Executive Order No. 9250, issued October 3, 1942,[4] the President, pursuant to the authority granted by the Act amending the Emergency Price Control Act, delegated to the Director of Economic Stabilization all the powers and authority, as described, given to the President by the Act. By Directive No. 1, issued October 14, 1942,[5] the Director of Economic Stabilization, acting under the authority of Executive Order No. 9250, delegated to appellant, the Administrator of the Office of Price Administration, all the powers and authority granted by the quoted provision of the Act.

Appellee is a common carrier. On September 23, 1942, it filed with the Interstate Commerce Commission tariffs to increase from ten cents to fifteen cents the interstate rate of fare on its passenger bus line between Seat Pleasant, Maryland, and points within the District of Columbia. No modification, change or suspension of these tariffs was made by the Commission. At 12:01 a. m., October 25, 1942, without giving notice to the President, to the Director of Economic Stabilization, or to appellant, appellee increased its rates. On November 3, 1942, appellant filed his complaint in the District Court for an injunction to restrain appellee from making any charges for transportation services rendered by it in excess of such charges as had been made for such transportation services as of September 15, 1942, until such time as appellee had complied with the requirements of the Act of October 2, 1942. The District Court dismissed the complaint and this appeal followed.

We agree with the conclusion of the District Court that the rate increase made by appellee was a *general increase* within the meaning of the Act of October 2, 1942. Appellee's busses carry approximately 13,000 passengers daily over its several routes. Of these, approximately 2,300 passengers daily, or 17.8% of the total, are affected by the increased rates. Its busses, which operate on the route between Seat Pleasant, Maryland, and the

---

[1] 50 U.S.C.A.Appendix, § 961 et seq.
[2] 50 U.S.C.A.Appendix, § 901 et seq.
[3] Pub. L. No. 729, 77th Cong., 2d Sess.
[4] 50 U.S.C.A.Appendix § 901 note; 7 Fed.Reg. 7871.
[5] 7 Fed.Reg. 8758.

District of Columbia, carry approximately 7,700 passengers daily, of which approximately 2,300, or 30%, are affected by the rate increase. The term *general increase* has no well defined meaning in the law of carriers or of public utilities. It does not appear in the Interstate Commerce Act [6] and, while it has been used in decisions of the Commission, the references have been casual rather than definitional. However, increases have been described as general when, for example, they affected fifteen per cent of the total tonnage and thirty per cent of the total freight revenues of the area; [7] when they affected rates on a particular class of commodities, [8] or on particular commodities in a particular area. [9]

■ The contemporaneous administrative construction of the words by the Price Administrator [10] makes the definition rest upon a distinction between an increase which is applicable to a class of passengers, shippers or customers, and one which is applicable to a particular customer or transportation service under special arrangement. [11] While this construction is not controlling, it is, we think, a reasonable one and one which expresses the intention of the Act of October 2, 1942. The same distinction has been frequently drawn for the purpose of determining whether a particular law is sufficiently general to avoid attack upon the ground of unconstitutionality. [12]

---

[6] 49 U.S.C.A. § 1 et seq.

[7] Eastern Case, 20 I.C.C. 243, 247: "It is estimated that the advances affect about 15 per cent of the total tonnage of this territory and about 30 per cent of the total freight revenues, but if reference be had to the articles affected, it will be found that almost everything, with the exception of a few of the heavier and coarser articles, is by this advance subjected to an increased transportation charge. It may be properly said, therefore, that these proposed tariffs work a *general advance* in freight rates within the limits to which they apply, and such was the professed intention of the carriers in filing them." [Italics supplied]

[8] Boots and Shoes from New York Points, 91 I.C.C. 591, 597: "However, under the circumstances, it is our opinion that the discrimination complained of should have been, and should now be, removed by respondents first establishing commodity rates to Baltimore, and then if at a later date they desire to again file schedules asking for a *general increase* in their boot and shoe rates, when the New England lines file their schedules proposing the increases hereinbefore referred to, the same could be considered on a more comprehensive record than that now before us." [Italics supplied]

[9] Grain and Grain Products, 122 I.C.C. 235, 264: "When, therefore, the carriers in an investigation and suspension proceeding propose what in substance amounts to a *general increase* in rates over a large area on agricultural commodities which have been shown to be affected by depression, they must clearly demonstrate that such increase is justified under the law including the provisions of the resolution. * * * But it has always been recognized that the burden of transportation may reasonably be

adjusted with some regard to the value of the service, in other words, that the higher grade, more valuable commodities may be required to pay a greater margin of profit than those that are of lower grade and less valuable." [Italics supplied]

[10] Procedural Regulation No. 11, Notice of Increases in Rates and Charges of Common Carriers and other Public Utilities, issued November 12, 1942, 7 Fed. Reg. 9390: "§ 1300.901 *Definition.* For the purpose of this Procedural Regulation No. 11, a general increase in the rates or charges of a common carrier or other public utility is defined as any change in its rates, fares, classifications, rules, regulations or practices which results in an increase in the charges for transportation or other public utility service applicable to a class of passengers, shippers or customers, including increases in wholesale or industrial rates or charges for public utility services, as distinguished from an increase of rates or charges applicable to a particular customer or transportation service under special arrangement."

[11] See Steele-Smith Dry Goods Co. v. Birmingham Ry., Light & Power Co., 15 Ala.App. 271, 73 So. 215.

[12] Harwood v. Wentworth, 162 U.S. 547, 563, 16 S.Ct. 890, 40 L.Ed. 1069; Peirce v. Van Dusen, 6 Cir., 78 F. 693, 704, 69 L.R.A. 705 (Harlan, Taft and Lurton); Tullis v. Lake Erie & Western R., 175 U.S. 348, 351, 20 S.Ct. 136, 44 L.Ed. 192; In re Pittsburg, 217 Pa. 227, 231, 66 A. 348, 350, 120 Am.St.Rep. 845, affirmed sub nom. Hunter v. Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151; People v. Chicago, 349 Ill. 304, 323, 182 N.E. 419, 430: "An act is general, not because it operates in every place or upon every person in the state, but because every place or person brought within the relations or circumstances provided for

■ The second issue of law presented on this appeal is whether the provisions of the Act of October 2, 1942 apply to an increase in rates by a common carrier which had filed a schedule of tariffs with the Interstate Commerce Commission nine days prior to approval of the Act, but which rates had not been put into operation because the thirty-day waiting period, prescribed by the Interstate Commerce Act,[13] had not yet elapsed. The answer depends upon the meaning of the following words: " * * * no common carrier * * * shall make any general increase in its rates or charges which were in effect on September 15, 1942, * * *." It is not disputed that on September 15, 1942, the ten-cent fare was in effect. It is not contended that the fifteen-cent fare was collectible from passengers before October 25, 1942. But appellee does contend that the increase was *made* on September 23, 1942, when it filed its tariffs.

Section 217(c) of the Interstate Commerce Act,[14] upon which appellee relies, does not require such a conclusion. Its language, instead, suggests just the contrary. It provides that: "No *change shall be made* in any rate * * * specified in any effective tariff * * * *except after* 30 days' notice of the *proposed change* * * *. Such notice shall plainly state the change *proposed to be made* and *the time when such change will take effect.*" [Italics supplied.] Neither does the conclusion follow from the fact that under ordinary circumstances, prior to the enactment of the Act of October 2, 1942, nothing further was required of the carrier to effectuate the increase than to file its tariff and wait for the lapse of thirty days. Even under those circumstances the going into effect of the proposed change was not necessarily automatic. Section 216(g) of the Act[15] authorizes the Commission, upon complaint of any interested party or upon its own initiative, to hold a hearing concerning the lawfulness of the proposed new rate or fare; for this purpose it has power to suspend the operation of the new schedule for a period of seven months;

and after the hearing it may, pursuant to the provisions of Section 216(e),[16] prescribe the lawful rate or fare. In view of these statutory provisions it is obvious that appellee's contention—that certain orders and regulations of the Commission compel the conclusion that the proposed rate increase was *made* on September 23, 1942— is without merit.

■ But, apart from all statutes existing prior to October 2, 1942, and all orders, rules and regulations made pursuant to those statutes, the Act of October 2, 1942 is conclusive of the issue presented for our decision. As it was enacted subsequent to the Interstate Commerce Act it supersedes that Act, to whatever extent may be necessary to achieve its own purposes. Its clearly expressed purpose was to stabilize prices, wages and salaries, affecting the cost of living, upon the basis of the levels which existed on September 15, 1942. To this end the President was authorized to issue a general order. To this end, also, a further express provision was added, prohibiting a common carrier from making any general increase in its rates which were in effect on September 15, 1942, unless it shall first give thirty days' notice to the President, or his designated agent, and consent to timely intervention before the federal, state or municipal authority which has jurisdiction to consider such an increase. This imposes no undue hardship upon the carrier. But the new Act does plainly require the giving of such notice and permits timely intervention by the Price Administrator before the Interstate Commerce Commission, followed by such appropriate showing as he may wish to make. To that extent it adds a further requirement to Section 217(c) of the Interstate Commerce Act; and to that extent, it holds in abeyance the going into effect of any proposed general increase over the levels existing on September 15, 1942. Congress made no exception in the Act, in favor of carriers who had filed schedules prior to October 2, 1942, but had not put them into actual effect before September 15, 1942. We see no possible rea-

---

is affected by the law. An act is not local or special merely because it operates in but one place or upon a particular class of persons or things, provided there is a reasonable basis for the legislative classification. A law may be general notwithstanding the fact that it may operate in only a single place where the

condition necessary to its operation exists." See West Coast Hotel Co. v. Parrish, 300 U.S. 379, 400, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330.

[13] § 217(c), 49 U.S.C.A. § 317(c).
[14] 49 U.S.C.A. § 317(c).
[15] 49 U.S.C.A. § 316(g).
[16] 49 U.S.C.A. § 316(e).

son for writing such ·an exception into the Act by way of interpretation. Every consideration which concerns the effective prosecution of the war, and the stabilization of the cost of living,[17] argues to the contrary.

We conclude, therefore, that appellee failed to comply with the requirements of the Act of October 2, 1942; consequently, that the increased rates which it is ·now charging are unlawful. The District Court should therefore set aside its judgment and grant the relief prayed for in appellant's complaint.

Reversed.

---

[17] Pub. L. No. 729, 77th Cong., 2d Sess.: *"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That in order to aid in the effective prosecution of the war, the President is authorized and directed, on or before November 1, 1942, to issue a general order stabilizing prices, wages, and salaries, affecting the cost of living; and, except as otherwise provided in this Act, such stabilization shall so far as practicable be on the basis of the levels which existed on September 15, 1942." 50 U.S.C.A.Appendix, § 961.