**BOWLES v. CITY AND COUNTY OF SAN FRANCISCO et al.**

No. 25585–G.

District Court, N. D. California, S. D.

Jan. 29, 1946.

610

Austin Clapp, Herbert H. Bent, and Jacob Chaitkin, all of San Francisco, Cal., for plaintiff.

John J. O'Toole, City Atty., and Dion R. Holm, Public Utilities Counsel, both of San Francisco, Cal., for defendants.

GOODMAN, District Judge.

On January 22, 1946, plaintiff, Price Administrator of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix, § 901 et seq., filed in this Court an action naming the City and County of San Francisco, the members of its Public Utilities Commission and of its Board of Supervisors as defendants and seeking a preliminary and final injunction enjoining the defendants from making effective a general increase of street railway fares on the municipally owned street trolleys and busses because of the failure of the defendants to comply with the provisions of the Stabilization Act of 1942, 50 U.S.C.A.Appendix, § 961.

Upon filing the complaint, the Court issued a temporary restraining order. Plaintiff's application for a preliminary injunction came on for hearing yesterday; affidavits and other documentary evidence were presented, argument was heard, and the application was submitted for decision.

No factual conflict needs resolution. The history of the proceedings leading up to the litigation is as follows:

The city owns and operates the street railways of San Francisco and certain bus lines. The Public Utilities Commission of the city is authorized by the City Charter (Sec. 130) to fix, change and adjust fares, but before so doing is required to publish in the official newspaper for five days a notice of its intention to so do and to therein specify a time of public hearing, not sooner than 10 days after the last day of publication, at which objections to the proposed schedule of fares may be heard.

On December 3, 1945, after giving the required notice and after public hearing, the Commission approved by its Resolution No. 7130 a schedule of fares higher than those in effect on September 15, 1942, and indisputably constituting a general increase of rates. Then, as provided by Section 130 of the Charter, it transmitted the same to the Board of Supervisors. On December 10, 1945, the Board of Supervisors considered the Commission's Resolution No. 7130 and designated Monday, December 17, 1945, as the day upon which it would, sitting as a Committee of the Whole, consider the same. On December 17, 1945, the Board sitting as a Committee of the Whole considered the schedule of rates, heard objections to and statements in favor of the increased rates by various persons and representatives of organizations and then continued further consideration until December 31, 1945.

On December 18, 1945, the City Attorney of the city, as counsel for the Commission, in purported compliance with the Stabilization Act of 1942, which in Section 961 provides: "* * * no common carrier or other public utility shall make any general increase in its rates or charges which were in effect on September 15, 1942, unless it first gives thirty days notice to the President, or such agency as he may designate, and consents to the timely intervention of such agency before the Federal, State, or municipal authority having jurisdiction to consider such increase," addressed a letter to the Price Administrator, designated by the President as the agency referred to in the statute, in which, inter alia, he notified the plaintiff as follows: "A hearing will be conducted before the Public Utilities Commission on January 21, 1946, at 5:00 P.M. in its meeting room 282 City Hall, San Francisco, when the increased proposal of rates shall be ordered into effect. Prior to the date last specified, and as soon as conveniently may be done by you, it would be appreciated by San Francisco if you would express your views that you have no jurisdiction over the increase of rates sought to be put into effect or that you believe the matter to be a municipal affair to be determined by San Francisco's authorities, or that you have no objection to the increase of rates. Please wire your answer to this notice and letter to the undersigned and oblige."

On December 31, 1945, the Board of Supervisors met and resumed consideration of the Commission's resolution No. 7130. Seven out of the eleven members of the Board voted to disapprove the rate schedule; but, lacking the required two-thirds vote necessary for disapproval, the resolution was thereby approved.

On January 7, 1946, the Commission adopted its resolution No. 7167 ordering the

rate increase to be effective as of January 20, 1946.

On January 14, 1946, the Office of Price Administration at Washington telegraphed the City Attorney that it desired to appear before the Commission on January 21, 1946, to present its opposition to the rate increase.

Upon receipt of the aforesaid telegram, the Commission rescinded its resolution No. 7167.

On January 21, 1946, O.P.A. representatives appeared before the Commission and presented objections to the rate increase, after which the Commission, the next day at about 2 P.M., ordered the rate increase to go into effect at 5 A.M. on January 23, 1946. Late on the afternoon of January 22d this action was filed and the temporary restraining order issued.

■■ At the hearing yesterday, defendants moved to dismiss the complaint upon the asserted ground that this Court is without jurisdiction because the transportation utility involved is municipally owned. This motion the Court denied for the reason that states and municipalities engaging in proprietary activities are subject to nondiscriminatory Federal regulatory or taxing statutes as to such activities, in common with all others so engaged. United States v. State of California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567; State of South Carolina v. United States, 199 U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261; State of New York v. United States, 66 S.Ct. 310.

■ The question here presented is not whether a municipally owned and operated public utility is subject to regulation as to its rates by the Price Administrator. That question was decided by Congress when it specifically excluded common carriers and public utilities from regulation under the Price Control Act. 50 U.S.C.A.Appendix, § 942. Existing public regulatory bodies were then deemed by Congress to be adequate to accomplish the statutory purpose as to public utilities.

But there is before the Court the issue as to whether the defendants complied with the provisions of Section 961 of the Stabilization Act of 1942. Congress there said that no common carrier or other public utility shall *make* any general increase in its rates or charges which were in effect September 15, 1942, unless it takes two steps: First, gives thirty days' notice; second, consents to the timely intervention by the Presidentially-designated agency before the authority having jurisdiction to consider such increase.

■ The statutory object of Section 961 is clear. While Congress did not exercise its power to authorize the Price Administrator to regulate public utility rates and charges at the time the Price Control Act became law, yet it later [1] obviously desired the President or his agent to be heard by and to advise the rate-fixing authorities, before making rate-raising decisions.

■ On December 18, 1945, when the City Attorney mailed his so-called notice, the Commission had already, namely, on December 3, 1945, made its decision of general increase of rates and submitted the same to the Board of Supervisors and the latter had already considered the same at two sessions, namely December 10th and December 17th. The hearing specified in the letter of December 18th (viz. January 21, 1946) was with respect to the time when "the increased proposal of rates shall be ordered into effect." [2]

Furthermore at the time set for hearing in the letter of December 18th, to wit, January 21, 1946, the Board of Supervisors had already, to wit, December 31, 1945, made its decision confirming the rate increase.

Thus there was neither thirty days' notice of the *making* of a general rate increase nor was there consent to timely intervention before the "authority having jurisdiction to consider such increase."

■ In my opinion "timely intervention" does not mean opportunity to be heard after decision. It means opportunity to be heard before decision. Hearings are held, evidence is produced and arguments are heard to shape and aid in decision. Hearings after the event are illusory and moot. The considerations which moved defendants to make the increase persuaded them before and at the time of decision. Hence intervention to be timely must be actual and real. Interstate Commerce Commission v. City of Jersey City, 322 U.S. 503, 513, 64 S.Ct. 1129, 88 L.Ed. 1420.

---

[1] The Stabilization Act of 1942 was passed some eight months after the adoption of the Price Control Act of 1942.

[2] The Stabilization Act clearly indicates that Congress was not concerned with the time when increased rates should become effective, but rather whether rates should be increased at all.

612

Since under the City Charter the Board of Supervisors was an authority "having jurisdiction to consider such increase," consent to timely intervention before that body was required of the defendants by law. Vinson v. Washington Gas Light Co., 321 U.S. 489, 64 S.Ct. 731, 88 L. Ed. 883; Henderson v. Washington, etc., Motor Lines, 77 U.S.App.D.C. 26, 132 F. 2d 729.

Under the statute, plaintiff was at least entitled to the same treatment as would be accorded any other intervenor or protestant. Vinson v. Washington Gas Light Co., 321 U.S. page 498, 64 S.Ct. 731, 88 L.Ed. 883.

Those who assume the responsibilities of public office and public trusteeship should set a high standard of good faith compliance with paramount law and authority. Dislike of duly enacted statutes never justifies noncompliance or half-hearted compliance. That the city officials believed they did not need or want Presidential intervention is beside the point. The law provides for intervention. The city officials need not be persuaded, under the law, by the intervention. But they must lawfully permit it.

A preliminary injunction may issue as prayed.

