**BOWLES, Price Administrator, v. OHIO FUEL GAS CO.**

Civil Actions Nos. 23431, 23432.

District Court, N. D. Ohio, E. D.

March 5, 1946.

---

A. D. Ruegsegger and Zellie Miner, both of Cleveland, Ohio, for plaintiff.

Luther Day and Arthur L. Dougan, of Jones, Day, Cockley & Reavis, all of Cleveland, Ohio, for defendant.

WILKIN, District Judge.

These two cases are before the court on motions for summary judgment. The pleadings and affidavits filed in connection with the motions leave no dispute as to any material facts.

In the summer of 1940 the defendant agreed to supply natural gas to the City of Bucyrus, Ohio and the Village of Crestline, Ohio at rates established in contract ordinances passed by the municipalities and accepted by the defendant pursuant to Art. XVIII, Sections 4 and 5, of the Ohio Constitution. In July, 1943, the rates were increased in accordance with escalator clauses in the ordinances. A second increase would have occurred in July, 1944, when the second escalator clause was to become effec-

tive, but, for some reason not apparent from the record, new ordinances were passed by the municipalities and accepted by the defendant revoking the former agreements and establishing new rates. The rates established by the new ordinances were the same as those provided in the second escalator clauses of the former ordinances except that they were reduced 1/2¢ per hundred cubic feet in the 2,000-5,000 bracket and increased 1/2¢ in the 10,000-25,000 bracket.

The plaintiff instituted these actions for an injunction restraining the defendant from collecting any charges in excess of the rates in effect on September 15, 1942, and for an order requiring restitution of all overcharges to defendant's customers on ground that the increases were in violation of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 901 et seq., as amended by the Stabilization Act of 1942, 50 U.S.C.A. Appendix § 961 et seq., in that defendant failed to notify the plaintiff of the proposed increases and consent to his intervention in the rate fixing proceedings. Defendant admits that no notice was given but denies that it was required to do so; it also contends that the plaintiff has no capacity to bring the suits and that the complaints fail to state any cause of action.

Under section 302(c) of the Emergency Price Control Act, public utility rates were excluded from price control. But section 1 of the Stabilization Act provides that:

"No common carrier or other public utility shall make any general increase in its rates or charges which were in effect on September 15, 1942, unless it first gives thirty days notice to the President, or such agency as he may designate, and consents to the timely intervention by such agency before the Federal, State, or municipal authority having jurisdiction to consider such increase."

Section 7(b) of the Stabilization Act provides that:

"All provisions (including prohibitions and penalties) of the Emergency Price Control Act of 1942 which are applicable with respect to orders or regulations under such Act shall, insofar as they are not inconsistent with the provisions of this Act, be applicable in the same manner and for the same purposes with respect to regulations or orders issued by the Price Administrator in the exercise of any functions which may be delegated to him under authority of this Act."

Executive Order 9250, Title VI(4), 50 U.S.C.A. Appendix § 901 note, designated the Economic Stabilization Director as the agency to receive notices of rate increases by public utilities (as provided in section 1 of the Stabilization Act) and authorized the Director to carry out the powers granted to him "through such officials or agencies, and in such manner, as he may determine." (5) By Directive No. 1 (7 F.R. 8757) the Office of Economic Stabilization designated the Price Administrator as its representative to receive notices of rate increases and to intervene in any rate making proceeding and granted him authority to issue regulations and to take such steps as were deemed appropriate for effectuating the policies of the Emergency Price Control Act as amended by the Stabilization Act. The Office of Price Administration then issued P.R. 11 (7 F.R. 9390) prescribing the form and manner of filing notices of proposed rate increases.

On September 20, 1945, Executive Order 9620, 50 U.S.C.A. Appendix § 901 note (10 F.R. 12033), was issued abolishing the Office of Economic Stabilization and transferring its authority and functions to the Office of War Mobilization & Reconversion. All prior regulations, rulings, and other directives "relating to the Office of Economic Stabilization" which were not in conflict with the Order were to remain in effect. The Director of War Mobilization & Reconversion then issued a directive (10 F.R. 12812) establishing the office of Stabilization Administrator and delegating to him the functions and authority formerly vested in the Director of Economic Stabilization.

Although neither the Emergency Price Control Act nor the Stabilization Act specifically authorizes the Price Administrator to institute an action of this type, the broad powers of enforcement provided by the Emergency Price Control Act (which were made applicable to utility cases by section 7(b) of the Stabilization Act), coupled with the delegation of authority to the Price Administrator by Office of Economic

Stabilization Directive No. 1, gave the plaintiff authority and capacity to bring these suits. The defendant contends that the provision of Executive Order 9620 providing that "all prior regulations, rulings, and other directives relating to the Office of Economic Stabilization" should remain in effect did not include regulations, etc., "issued by" the Office of Economic Stabilization. Therefore, it contends, Directive No. 1, which designated the Price Administrator as the agency to receive notices of utility rate increases, was revoked by Executive Order 9620 because Directive No. 1 was not a directive "relating to" the Office of Economic Stabilization but was a directive "issued by" that office. Such an interpretation of Executive Order 9620 seems too restrictive. In its ordinary meaning, "regulations, rulings, and other directives relating to the Office of Economic Stabilization" would seem to include those issued by that agency as well as those otherwise pertaining to it, and there is no indication that the President did not use the phrase according to its ordinary meaning. Since the authority and functions of the office were transferred to another agency, it seems unreasonable to assume, in the absence of clear language to the contrary, that the President wished to revoke all the regulations, rulings and directives which had been promulgated by the former agency.

The defendant next contends that the Stabilization Act and the regulations issued thereunder did not apply to rates fixed by a contract ordinance, as they were fixed in these cases, because there was no proceeding in which the Price Administrator could have intervened. The statute and regulations, however, clearly imposed a duty upon the defendant to give the Administrator 30 days notice of any proposed increase in rates and to consent to his intervention. The required notice and consent should have been given so that the Administrator could have taken whatever action was appropriate and feasible under the circumstances.

The increases which took place in July, 1943 were automatic increases which became effective precisely as provided in the escalator clauses of the contracts which were signed in 1940. Although they did not occur until July, 1943, the rates were "in effect on September 15, 1942". There are no federal cases on this question, but the Supreme Court of Illinois has held that no notice need be given respecting rate increases which were established before the Stabilization Act was enacted, even though the higher rates were not collected until after the date of the Act. Pullman Co. v. Illinois Commerce Commission, 390 Ill. 40, 60 N.E.2d 232; Fleming v. Illinois Commerce Commission, 388 Ill. 138, 57 N.E.2d 384. In Henderson v. Washington, Marlboro & Annapolis Motor Lines, Inc., 77 U.S.App.D.C. 26, 132 F.2d 729, it was held that carriers which had filed schedules with the Interstate Commerce Commission prior to the enactment of the Stabilization Act but had not put them into actual effect before September 15, 1942, must give the notice and consent to intervention required by the Act, but the reasoning in that case is not applicable to automatic increases made pursuant to escalator clauses in contracts made prior to the Act. After schedules have been filed with the Interstate Commerce Commission, there is a thirty-day waiting period during which the Commission may hold hearings on the proposed rates, suspend operation of the new schedules for that purpose, and, after the hearings, it may fix different rates. The requirement of section 1 of the Stabilization Act of 1942, 50 U.S.C.A. Appendix § 961, for notice and consent to intervention "before the Federal, State, or municipal authority having jurisdiction to consider such increase" could have no effect against the escalator increase of June 4, 1943, because there was no authority "having jurisdiction to consider such increase." It was automatic and therefore in legal effect. Notice would have served no purpose.

When, however, the council enacted in 1944 a new ordinance fixing rates to be charged to and collected from gas consumers it was acting as an authority having jurisdiction, and due regard for the purpose of the law required an interpretation giving effect to the provision for notice and consent to intervention. The Administrator should have been given a chance to be heard as the law evidently intended.

As stated above, the contract ordinances adopted in 1944 increased the rates

430

which would have become effective under the escalator clauses in one bracket, i.e., between 10,000 and 25,000 cubic feet per month. O.P.A. P.R. 11, Sec. 1300.901, defines a "general increase" in rates as an increase to a class of customers as distinguished from an increase to a particular customer or transportation service under special arrangement. This definition received judicial approval in Henderson v. Washington, Marlboro & Annapolis Motor Lines, Inc., 77 U.S.App.D.C. 26, 132 F.2d 729. As thus defined, the increase in the 10,000-25,000 bracket was clearly a "general increase" in rates, and, therefore, notice and consent to intervention should have been given to the Price Administrator as required by the Stabilization Act and regulations issued thereunder.

■ Although the Stabilization Act required the defendant to give the plaintiff notice of the proposed increase in rates and consent to his intervention, it did not limit the powers of the municipalities in fixing rates, and they could have approved the rates authorized by the 1944 ordinances even if the plaintiff had disapproved of them. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420; Vinson v. Washington Gas Light Co., 321 U.S. 489, 64 S.Ct. 731, 88 L.Ed. 883. In view of the fact that the rates were reduced in another bracket, it is quite possible that the municipalities might have granted the increase over the plaintiff's protest if he had intervened.

■ Under the circumstances in these cases, the court is of opinion that it should not enter final judgment or order restitution until it is satisfied that the increase would not have been granted if the Price Administrator had intervened. The defendant should notify the councils of the two municipalities of the pendency of these cases and inform them that so far as it is concerned they are free to reconsider the rate-fixing ordinances adopted in 1944 and that it consents to the plaintiff's intervention with right to be heard by said councils. The defendant should give the plaintiff the required notice so that the plaintiff will have an opportunity to present to the councils his objections to any increases. The councils are of course free to take no

further action or to re-affirm the action taken July 20, 1944, or to enact new rate-fixing ordinances to supersede those adopted in 1944. The court will retain jurisdiction of the two cases until such notices have been given and the councils have had a reasonable time to consider the matter. If the councils of the two municipalities take no action within a reasonable time after the above notices have been given, the cases will be dismissed. If the councils or either of them should establish new and different rates, the court will then reconsider the case and hear the parties before final decree or judgment is entered. Entry may be drawn by plaintiff in accordance with this opinion.