PORTER, Price Administrator, v. OHIO
FUEL GAS CO.
Nos. 10293, 10294.

Circuit Court of Appeals, Sixth Circuit.
Jan. 27, 1947.

Wm. W. Kapell, of Washington, D. C. (George Moncharsh, David London, Albert M. Dreyer, and William W. Kapell, all of Washington, D. C., and Samuel J. Weiner, of Cleveland, Ohio, on the brief), for appellant.

Arthur L. Dougan, of Cleveland, Ohio, and Edward H. Laylin, of Columbus, Ohio (Luther Day and Arthur L. Dougan, both of Cleveland, Ohio, and Freeman T. Eagleson and Edward H. Laylin, both of Columbus, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

The problem presented by these appeals involves the authority of the Price Administrator, or other designated agency, to intervene before federal, state or municipal authority having jurisdiction to consider general increases in the rates or charges made by common carriers or other public utilities. There is no authority in the Price Administrator for the regulation of such rates. § 302(c) (2), 50 U.S.C.A.Appendix, § 942(c) (2). Section 1 of the Stabilization Act, 50 U.S.C.A.Appendix, § 961, however, provides:

" * * * no common carrier or other public utility shall make any general increase in its rates or charges which were in effect on September 15, 1942, unless it first gives thirty days notice to the President, or such agency as he may designate, and consents to the timely intervention by such agency before the Federal, State or municipal authority having jurisdiction to consider such increase."

The facts in the present case are not in dispute. In the summer of 1940 the appellee agreed to supply natural gas to the Village of Crestline and the City of Bucyrus, both in Ohio, at rates established in contract ordinances passed by the municipalities and accepted by the appellee in conformity with Article XVIII, §§ 4 and 5 of the Ohio Constitution. Pursuant to escalator clauses in the ordinances the rates were to be increased in July 1943 and again in July 1944. For reasons not disclosed by the record, and prior to the operative date of the second escalator clause, new ordinances were adopted by the municipal authorities and accepted by the appellee which reduced the rates that would have been charged commencing in July 1944, in the bracket between 2000 and 5000 cubic feet per month, increased the rates in the bracket between 10,000 and 25,000 cubic feet, leaving the rates provided in the second escalator clause intact in other brackets.

In October, 1945, the appellant instituted actions for injunctions restraining the utility from collecting, in either municipality, charges in excess of the rates in effect on September 15, 1942, and for an order requiring restitution of all overcharges to its customers, on the ground that the increases were invalid because in violation of the Emergency Price Control Act as amended by the Stabilization Act, 50 U.S.C.A.Appendix, § 901 et seq., in that the utility had failed to notify the appellant of the increased prices and had failed to consent to his intervention in the rate-fixing proceedings. The utility admits that no notice was given and no consent granted, but denies that it was required to do so. This poses the main problem of the case.

The district court denied the injunctions and, the decrees being interlocutory, the cases are here under the authority of Title 28 U.S.C.A. § 227. The court reasoned that the increases provided in escalator clauses contained in contracts signed in 1940, were automatic increases and so were rates "in effect on September 15, 1942." It concluded that § 1 of the Stabilization Act did not apply to them because when it took effect there was then no federal, state or municipal authority having jurisdiction to consider the increases, and

notice would have served no purpose. However, the new ordinances enacted in 1944 bore a different aspect. When they were being considered it was by municipal authorities having jurisdiction, and due regard for the purpose of the Stabilization Act required giving effect to the provision for notice and consent to intervention whereby the Administrator should have a chance to be heard as the law intended. The 1944 ordinances increased the rates which would have become operative under the escalator clauses in one bracket, i. e., between 10,000 and 25,000 cubic feet per month. Such increase was a "general increase," and while the Stabilization Act did not undertake to limit the powers of the municipalities in fixing rates, the Administrator should have had an opportunity to protest the increases. Based upon this rationalization the court was of the opinion that it should not enter final judgment or order restitution until it was satisfied that the increase would not have been granted if the Price Administrator had intervened. It thereupon directed the utility to notify the councils of the two municipalities of the pendency of these cases, to inform them that they were free to reconsider the rate-fixing ordinances adopted in 1944 and that the utility consented to the Administrator's intervention with the right to be heard. It retained jurisdiction of both cases until such notices should be given and the councils have had a reasonable time to consider the Administrator's protests. If, then, the councils took no action within a reasonable time after notice, the cases would be dismissed. If they or either of them should establish new or different rates, the court would then reconsider the case and hear the parties before final decree or judgment would be entered.

■ With the view that the rates fixed in the 1940 ordinances were rates in effect on September 15, 1942, even though they did not become operative until after that date, we agree. While there are no federal cases interpreting § 1 of the Stabilization Act in the respect here involved, there is respectable and persuasive authority in Illinois holding that no notice need be given respecting rate increases which were established before the Stabilization Act was enacted, even though the higher rates were not to be collected until after the date of the Act. Pullman Co. v. Illinois Commerce Commission, 390 Ill. 40, 60 N.E. 2d 232; Fleming v. Illinois Commerce Commission, 388 Ill. 138, 57 N.E.2d 384.

■ Another consideration contributes to our conclusion. The ordinances of 1940 were valid ordinances under Ohio law. This is not challenged. Except by mutual consent of the municipalities and the utility, they could not be abrogated. All constitutional requirements for their enactment and effect had been complied with. There was pending on September 15, 1942, no proceeding before either municipal authority to consider the increases provided by the escalator clauses. Section 1, by clear implication, if not, indeed, expressly, speaks in terms of a thing still to be decided and not in terms of a determination already made, and given validity by valid ordinances. There was, on September 15, 1942, no municipal authority "having jurisdiction to consider such increases." It must be observed that the Price Administrator had no authority to fix rates, and cases dealing with price ceilings on rents and commodities furnish no analogy because the Administrator is expressly given power over prices. The most he can do under any circumstances, in respect to utility rates, is to persuade municipal authorities that proposed rates are unfair and inflationary. But he can neither direct nor persuade municipal authorities to set aside rates which, under the laws and Constitution of Ohio, are beyond their power to change. As was said in Markham v. Cabell, 326 U.S. 404, at page 409, 66 S.Ct. 193, at page 195, "The process of interpretation also misses its high function if a strict reading of a law results in the emasculation or deletion of a provision which a less literal reading would preserve."

Henderson v. Washington, Marlboro & Annapolis Motor Lines, Inc., 77 U.S.App. D.C., 26, 132 F.2d 729, relied upon by the Administrator, is not apposite. There it was held that carriers which had filed schedules with the Interstate Commerce Commission prior to the enactment of

the Stabilization Act, but had not put them into actual effect before the critical date, must give notice and consent to intervention as required by the Act. But carrier rates subject to the control of the Interstate Commerce Commission do not become effective with the filing of a schedule. The Commission may hold hearings on the proposed rates, suspend their operation and, after hearings, fix different rates. Here there was no occasion for further hearings and no authority resided in the municipal councils to suspend the operation of the escalator clauses or to make changes in the rates therein provided. Notice would have served no purpose and there was no proceeding in which the Administrator could intervene. The law does not generally require a gesture of pure futility and the Stabilization Act is no exception.

■ With respect to the new ordinances enacted in 1944, the problem has a different posture. When they were contemplated the Stabilization Act was already in effect, requiring notice and a declaration of consent to intervention. While there may or may not have been a hearing, in strict sense, the municipal authorities, when negotiating with the utility, had jurisdiction to consider proposed increase in the several brackets. After notice and consent to intervention the Administrator, within powers doubtless limited to persuasion, may have been able to point out to the councils and to the utility the inflationary character of such increases. His intervention may not have been wholly futile. The opportunity to intervene while decision is still pending, is granted to him by the law, and he should have had the notice and consent which the law provides. While there is no precedent for the action of the court in requiring notice and intervention after decision, the court did all that it was possible to do under the circumstances to vindicate the requirements of the Act, and more than that is not to be expected from a wise chancellor.

■■ Curiously, the appellee here challenges the authority of the Administrator to sue by reason of the several executive orders which abolished the Office of Economic Stabilization and transferred its authority and functions to other agencies, and because allegedly neither the Emergency Price Control Act nor the Stabilization Act specifically authorizes the Price Administrator to institute actions of this type. It accordingly challenges the power of the court to compel notice and consent or to retain jurisdiction in respect to the 1944 rates. It also questions the power of the court to compel restitution in case it should determine so to do after its orders have been complied with in respect to notice and intervention, and a hearing had, and urges that the cases should have been unconditionally dismissed. The utility, however, has not appealed and it is doubtful that it could. The cases are here solely in pursuance of the power of the court to review orders denying interlocutory injunctions. Those denials we here affirm. The utility so far has not been harmed, and it will be time enough to consider its several grievances when and if its rights have been invaded. It is, of course, true that reviewing courts may and are charged with the duty of their own motion, to consider questions of jurisdiction whether raised below or not, but this doctrine relates primarily to questions of jurisdiction involving the constitutional grant of judicial power and derives from the caution always observed by federal courts against assuming power transcending the constitutional grant, but where, as here, jurisdiction depends upon statutory interpretation, there has been an unequivocal conclusion that jurisdiction exists, and neither record nor briefs raise grave doubts as to its soundness, we find ourselves under no compulsion to give detailed consideration to jurisdictional challenges by a non-appealing and unharmed litigant. Miller v. First Service Corporation, 8 Cir., 84 F.2d 680, 109 A.L.R. 1179.

The decrees are affirmed.